UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICIA BRUCE, | |
| Plaintiff, | Case No. 3:20-cv-00087 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair E. Newbern |
| CHRISTINE E. WORMUTH,[1] Secretary of the Army, | |
| Defendant. | |

To:     The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

This civil rights action arises from pro se Plaintiff Patricia Bruce's employment at the Blanchfield Army Community Hospital (BACH) in Fort Campbell, Kentucky. (Doc. No. 1.) Bruce alleges that, while employed at BACH from 2011 through 2016, she was discriminated against on the basis of race, color, sex, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17.[2] (*Id.*) Defendant Secretary of the Army Christine E. Wormuth has filed a motion for summary judgment, supported by a memorandum of law, a statement of undisputed material facts, affidavits, and exhibits. (Doc. Nos. 32–36.) Bruce has filed a response. (Doc. No. 38.) The Secretary has not filed an optional reply. Considering the record as

---

[1]     Wormuth was sworn in as Secretary of the Army on May 28, 2021. Under Federal Rule of Civil Procedure 25(d), she is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

[2]     Bruce also pleaded claims for slander and assault (Doc. No. 1), which the Court dismissed on August 19, 2020 (Doc. No. 27).

a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Secretary's motion be granted in part and denied in part.

## I. Background[3]

### A. Factual Background

Bruce, a Latina woman of Honduran origin, began working in BACH's Nutrition Care Division (NCD) in July 2011 as a mess hall attendant at wage grade WG-02. (Doc. Nos. 35-2, 36.) Around May 2014, she became a cook in the NCD, a WG-04 position. (Doc. Nos. 35-1, 35-3, 36.) Sometime in 2014, Bruce's coworker, Anthony Huggins, a white man, was promoted from cook at WG-02 to first cook at WG-06. (Doc. Nos. 35-1, 35-2, 36.) Huggins and Bruce's first-level supervisor was shift supervisor Jesse Powell, an African-American man, and their second-level supervisor was cook supervisor Jimmy Walker, also an African-American man. (Doc. Nos. 35-1, 35-2, 36.)

#### 1. 2014 Conflict with Huggins and First EEO Contact

Conflict arose between Bruce and Huggins after Huggins was promoted to the first cook position. (Doc. Nos. 35-1, 35-2, 36.) Bruce complained to Walker and BACH Commander Colonel Telita Crosland that Huggins didn't "deserve to get promoted." (Doc. No. 35-1, PageID# 216, ¶¶ 17–24.) On October 22, 2014, shift supervisor Bradley Graham filled in for

---

[3] The facts in this section are drawn from the Secretary's summary judgment declarations and exhibits (Doc. Nos. 34, 35–35-6) and statement of undisputed material facts (Doc. No. 36). Bruce responded to the Secretary's statement of undisputed facts in part. (Doc. No. 38.) The statements of fact to which Bruce did not respond are treated as undisputed for purposes of summary judgment. M.D. Tenn. R. 56.01(f) (failure to respond). Further, the responses that Bruce did provide are not supported by specific citations to the record as required by Local Rule 56.01(c)(3) and Federal Rule of Civil Procedure 56(c)(1)(A). M.D. Tenn. R. 56.01(c)(3) (response to statement of facts); Fed. R. Civ. P. 56(c)(1)(A). ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Therefore, all of the Secretary's statements of fact are treated as undisputed for purposes of summary judgment.

Powell as a supervisor in the NCD and documented a "lack of communication and teamwork between [Huggins] and [ ] Bruce." (Doc. No. 35-1, PageID# 206, ¶ 3.) Graham reported that Bruce and Huggins "directed some snide comments" at one another during their shift and that Bruce asked Graham about contacting an Equal Employment Opportunity (EEO) representative. (*Id.* at PageID# 207, ¶ 6.) Bruce testified that, on that day, Huggins moved towards her with his fists raised and said "B[****], I heard that you have been talking bad about me" before two cashiers intervened. (Doc. No. 35-2, PageID# 248, ¶¶ 19–20.) Bruce contacted an EEO counselor on October 31, 2014. (Doc. Nos. 34, 35-1, 36.) She did not file an informal or formal EEO complaint at that time. (Doc. Nos. 34, 36.)

Powell addressed the October 22, 2014 altercation by talking to Bruce and Huggins separately and mediating a discussion between them. (Doc. Nos. 35-1, 36.) Powell notified Walker of his discussion with Bruce and Huggins, but did not elevate the matter further because he believed that Bruce and Huggins "came to agreement . . . and worked great together." (Doc. No. 35-1, PageID# 230, ¶¶ 18–20; Doc. No. 36.) Bruce testified that she stopped being "ostraciz[ed] . . . and harass[ed]" after this initial EEO contact (Doc. No. 35-2, PageID# 256, ¶¶ 17–18) and that she and Huggins "got along okay" for a period of time after that (Doc. No. 35-2, PageID# 250, ¶ 20; Doc. No. 36). Conflict arose again after Walker, financial technician William Ruffin, and bakery worker Dexter George began "constantly" telling Huggins that Bruce was saying negative things about him (Doc. No. 35-2, PageID# 250, ¶ 21.)

### 2.    2015 Conflict with Russaw and Huggins

Bruce alleges that, in September 2015, food service worker Benita Russaw, an African American woman, entered the NCD dish room where Bruce was present and asked what food was being cooked "'because it smells like Mexican and Taco Bell in here[.]'" (Doc. No. 35-2, PageID# 254, ¶¶ 23–24; Doc. Nos. 35-1, 36.) Bruce believed that these comments were directed

at her because she is Honduran. (Doc. No. 35-2.) Bruce also alleges that Russaw sent threatening messages about Bruce to a coworker saying "'b[****] better watch her back.'" (Doc. No. 35-1, PageID# 213, ¶¶ 12–13.)

On November 11, 2015, Bruce and Huggins argued again, and Huggins swept pans off a table in Bruce's direction. (Doc. Nos. 35-1, 35-2, 36.) Bruce—who also alleges that Huggins struck her with his shoulder—called the military police to report that she had been assaulted; the military police responded and arrested Huggins. (Doc. Nos. 35-1, 36.) On November 13, 2015, Bruce told NCD Chief Major Susan Stankorb "that she did not feel safe in her work place with [ ] Huggins" and "intended . . . to discuss the incident" with Crosland. (Doc. No. 35-1, PageID# 178, ¶ 2; Doc. No. 36.)

On November 16, 2015, Deputy Commander Lieutenant Colonel Steven Shipley sent Crosland an email stating that "Bruce ha[d] decided to take sick and annual leave the rest of th[at] week and [the] next week." (Doc. No. 35-1, PageID# 191.) On November 23, 2015, Crosland appointed Captain Michael Mandel to conduct an administrative investigation under Army Regulation (AR) 15-6 into the NCD's work environment and leadership, including whether there was "a hostile or offensive work environment." (Doc. No. 35-4, PageID# 266; Doc. No. 36.)

BACH management offered Huggins and Bruce administrative leave to keep them separated during the AR 15-6 investigation. (Doc. Nos. 35-1, 35-2, 36.) Bruce chose not to take administrative leave. (Doc. Nos. 35-2, 36.) Huggins was placed on partial paid administrative leave from late November 2015 through January 24, 2016. (Doc. Nos. 35-1, 36.) Stankorb notified Bruce and Huggins that they both would be disciplined for the November 11, 2015 altercation. (Doc. Nos. 35-1, 36.) That notice was given to Huggins on December 28, 2015, and to Bruce on February 1, 2016. (Doc. No. 35-1.) Both Huggins and Bruce were given an opportunity to request

alternative discipline. (Doc. Nos. 35-1, 36.) Huggins entered into an alternative discipline agreement and received a letter of counseling on February 17, 2016, for sweeping pans off the table during his argument with Bruce (Doc. Nos. 35-1, 36.) Bruce did not enter into an alternative discipline agreement and, on February 9, 2016, a letter of reprimand was placed in her personnel folder for calling Huggins a "b[****]" during the argument. (Doc. No. 35-1, PageID# 199; Doc. No. 36.) Bruce refused to sign the letter of reprimand. (Doc. No. 35-1.)

Even after they were counseled and reprimanded by BACH leadership, Huggins and Bruce continued to experience interpersonal conflicts. (Doc. Nos. 35-1, 36.) On February 10, 2016, Bruce received a letter of counseling for "star[ing] or glar[ing] at Mr. Huggins" (Doc. No. 35-1, PageID# 197) and Huggins received a letter of counseling on February 11, 2016, for "ball[ing] [his] fist up in the presence of Mrs. Bruce" (*Id.* at PageID# 198).

### 3. 2015–2016 AR 15-6 Investigation

Mandel interviewed Bruce for the AR 15-6 investigation in January 2016, and reported that it took "multiple hours" on January 11 and January 21, 2016, to complete Bruce's statement. (Doc. No. 35-4, PageID# 274.) The record includes an excerpt from a Department of the Army (DA) Form 2823 containing a statement by Bruce dated January 11, 2016.[4] (Doc. No. 35-1.) In response to a question about whether NCD leaders exhibited "toxic leadership," Bruce alleged that Walker showed favoritism to African American employees. (Doc. No. 35-1, PageID# 180.) She reported that George and Ruffin made sexually explicit comments to her, that "Walker participates in the conversation[,]" and that NCD leadership was aware of this behavior. (*Id.*) She alleged that George "watch[ed] women and downgrade[d] them" and "hated" her because she had refused to sleep with

---

[4] The Army uses DA Form 2823 to collect sworn statements in the course of law enforcement investigations. *See* Army Reg. 190-45 ¶ 7-10 (2016).

him and that Ruffin had asked her if she was "ready to come to the dark side[,]" made comments to her about the size of his penis, and told her "that once [she] go[es] black [she]'ll never go back." (*Id.*) Bruce reported that she had been "hated" and "punished" because she was "married to a white person[,]" refused to sleep with her coworkers, complained that other employees did less work than she did, and "st[ood] up to[ ] Mr. Huggin[s]'s abuse[.]" (*Id.*; Doc. No. 36.) She also alleged that she heard Walker tell George and Ruffin "that he was going to 'kill the b[****] Bruce and that mother f[*****] Carter with bullets that leave no trace.'" (Doc. No. 35-1, PageID# 180.)

On February 11, 2016, Mandel submitted findings and recommendations from the AR 15-6 investigation which stated that "several employees" reported a hostile or offensive work environment in the NCD, including an NCD employee named Ms. Devereaux who told Mandel that, "[o]n a daily basis, the men in the DFAC stare and make comments about women's bodies. In particular, Dexter George[.] I feel extremely uncomfortable while purchasing breakfast/lunch, due to his behavior." (Doc. No. 35-4, PageID# 275.) Mandel also stated that, "[a]fter interviewing both Ms. Bruce and Mr. Huggins[,] I feel these employees disagree consistently and have great animosity towards each other due to personal reasons. I am unsure if Mr. Huggins has any mental issues that may cause excessive anger or if he has a medical diagnosis of PTSD." (*Id.* at PageID# 277.) Mandel recommended that "NCD leadership . . . closely observe Ms. Bruce and Mr. Huggins and document any future disagreements and note trends" and "that EAP (Employee Assistance Program) interventions" and "EEO certified mediators" "be utilized" "for all future conflict resolution challenges." (*Id.* at PageID# 278.)

On March 22, 2016, Crosland approved the AR 15-6 investigation's findings that:

a.  The NCD environment was offensive and did not promote dignity and respect.

b.  NCD, as a division, suffered from a lack of clear and effective communication.

6

> c.  The routing and supervisory chains are not clearly defined within NCD.
>
> d.  NCD Soldiers and Department of the Army Civilian employees (DAC) have suffered from low morale.

(*Id.* at PageID# 264; Doc. No. 36.) The matter was then referred to various members of BACH leadership, including "to the BACH Physical Security Officer to forward to, and to coordinate with, the Fort Campbell[ ] Military Police so that they can assess [and] investigate . . . the allegation that Mr. Huggins has previously assaulted Ms. Bruce . . . ." (Doc. No. 35-4, PageID# 264.) The investigation was also referred to sexual assault response coordinator Tonika Rizer to "coordinate with [Stankorb] and . . . provide a brief to NCD regarding what actions constitute sexual harassment and how to file a formal and informal sexual harassment complaint . . . ." (*Id.* at PageId# 265.) NCD staff was also required to "complete dignity and respect training . . . ." (*Id.*; Doc. No. 36.)

On March 31, 2016, Stankorb proposed an action plan to respond to the investigation's findings. (Doc. No. 35-1.) She stated that NCD staff and supervisors would receive training to address the issues discovered in the investigation, including one-on-one counseling with Rizer for anyone specifically mentioned in reference to sexual harassment and assault response and prevention. (Doc. No. 35-1, PageID# 181; Doc. No. 36.) Stankorb also recommended that employees receive additional small-group training on sexual harassment and assault response and prevention and other identified issues. (Doc. No. 35-1.)

Bruce was transferred out of the NCD on June 26, 2016, when she was promoted to the position of medical records technician. (Doc. Nos. 35-3, 36.)

### B.  Procedural Background

### 1.  Bruce's EEO Complaint

On December 4, 2015, while the AR 15-6 investigation was ongoing, Bruce made initial contact with an EEO counselor. (Doc. Nos. 35-1, 36.) The EEO counselor's report describes two alleged instances of discrimination: (1) "when . . . Huggins approached [Bruce] with the attempt to strike her in the face . . . punched the table[,] and slid a pot towards [Bruce;]" and (2) when Russaw "made threats against [Bruce], . . . sent messages to a [c]o-worker saying 'B[****] better watch her back" and stood near Bruce and "said '[t]hat smells like Taco Bell and Mexican Food[.]'" (Doc. No. 35-1, PageID# 173.) Bruce asked the Department to transfer her to a work area outside the NCD, keep Huggins away from her, and stop Russaw from threatening her and her family. She also sought compensatory damages and attorney's fees. (Doc. No. 35-1.)

Bruce filed a formal EEO complaint on January 14, 2016, alleging discrimination on the basis of race, color, sex, and reprisal for her October 31, 2014 EEO contact. (Doc. Nos. 35-1, 36.) Bruce alleged that she was subjected to discrimination and retaliation by Walker, Ruffin, George, Huggins, and Russaw and attached several documents to her complaint.[5] (Doc. No. 35-1.) The Department of Defense Investigations and Resolutions Division held a fact-finding conference in Bruce's case on June 8, 2016, where Bruce, Walker, Huggins, Powell, Stankorb, Russaw, and Ruffin appeared as witnesses. (*Id.*) Bruce testified that she did not know if Huggins's actions towards her were because of her race "because he is married to Hispanic [*sic.*]." (*Id.* at PageID# 223; Doc. No. 36.) She stated that Huggins targeted "people that are weak[,]" which

---

[5]  The Secretary only filed the first page of Bruce's EEO complaint in support of her motion for summary judgment. (Doc. No. 35-1, PageID# 169.)

included men and women, and that "it [wa]s possible" that her national origin was a factor because she didn't "have the same beliefs as he does." (Doc. No. 35-1, PageID# 223–24; Doc. No. 36.)

An EEOC hearing on Bruce's complaint took place on October 16, 2018, before an Administrative Law Judge (ALJ). (Doc. Nos. 35-2, 35-5.) Bruce, Huggins, Russaw, and Graham testified at the hearing, and Bruce was represented by counsel. (Doc. No. 35-2.) Bruce testified that she believed Huggins targeted her because of her sex and race and because "people like Walker and Ruffin and [George were] lying, saying things that weren't true about [Bruce] to cause problems." (*Id.* at PageID# 249, ¶¶ 7–9.) She testified that Huggins had "several encounters with males that w[ere]n't from [the] United States and another coworker that he assaulted twice" (*id.* at ¶¶ 12–13); that Huggins "target[s] people of color that are weak, because he can get away with it" (*id.* at PageID# 253, ¶¶ 20–21); and that Huggins mentioned Bruce's 2014 EEO contact "several times" and "would show his anger quite often because of it." (*id.* at PageID# 254, ¶¶ 1–3.)

The ALJ found that Bruce had not established that she was subjected to discrimination or a hostile work environment on the basis of race, color, sex, or national origin, or in retaliation for her prior EEO activity. (Doc. No. 35-5.) The EEOC entered judgment against Bruce on November 11, 2018, and, on December 27, 2018, the Department issued a final administrative action on Bruce's complaint, adopting the ALJ's finding that Bruce "had not been subjected to discrimination" as to her claims "that she was discriminated against and subjected to a hostile work environment" on the basis of race, color, sex, national origin, or reprisal. (Doc. No. 35-5, PageID# 281–82.)

## 2.    Bruce's Federal Court Complaint

Bruce initiated this action in the United States District Court for the Western District of Kentucky on March 6, 2019, by filing a form complaint for employment discrimination cases naming the Secretary of the Army as a defendant. (Doc. No. 1.) Bruce checked boxes to indicate

9

that she brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and other federal law, under which she identified "28 USC [§ 4101] slander" and "18 USC [§] 113 assault[.]" (*Id.* at PageID# 4.) Bruce checked boxes to indicate that her claim was based on failure to promote, unequal terms and conditions of employment, and retaliation and wrote in "sexual harassment, reprisal, assault, [and] defamation." (*Id.* at PageID# 5.) She alleges that, between 2011 and 2016, she was discriminated against on the basis of race (Latina), color (brown), gender/sex (female), and national origin (Honduran). (Doc. No. 1.) She explains the facts of her case as follows:

> I suffered with constant sexual [and] racial harassment. Acts were condoned and watched by and approved by management including [a] cover up. I was physically assaulted twice by the same person. I have witnesses, sworn statements, and video evidence of claims. [I] suffer from permanent medical issues[.]

(*Id.* at PageID# 6.) Bruce did not include any other factual allegations and did not attach a copy of her formal EEO complaint or a right to sue letter, although she indicates that a letter was issued on December 27, 2018. (Doc. No. 1.) She seeks over $10 million in compensatory and punitive damages and at least $12,000 in costs and attorney's fees. (*Id.*)

The Secretary filed a motion to dismiss Bruce's claims for improper venue under Federal Rule of Civil Procedure 12(b)(3) and to dismiss Bruce's assault and defamation claims under Rule 12(b)(1) and (6). (Doc. No. 13.) The motion was granted in part as to transfer of venue (Doc. No. 18) and the case was transferred to the United States District Court for the Middle District of Tennessee. (Doc. No. 19.) This Court adopted the Magistrate Judge's report and recommendation on the motion to dismiss and dismissed Bruce's assault and defamation claims without prejudice for lack of subject matter jurisdiction. (Doc. No. 27.)

The Secretary then filed a motion for summary judgment, supported by a memorandum of law, a statement of undisputed material facts, and several declarations and exhibits. (Doc. Nos. 32–

36.) The exhibits include excerpts from the Department of Defense's investigative file into Bruce's claims (Doc. No. 35-1), excerpts from the transcript of the October 16, 2018 EEOC hearing (Doc. No. 35-2), a notification of personnel action regarding Bruce's June 26, 2016 promotion (Doc. No. 35-3), excerpts from the AR 15-6 investigation file (Doc. No. 35-4), the Department of the Army's final agency decision on Bruce's claims (Doc. No. 35-5), and a petty offense docket sheet with a handwritten note that criminal charges against Huggins were dismissed (Doc. No. 35-6). The Secretary argues that summary judgment is warranted because Bruce did not timely raise her claims to an EEO counselor; did not exhaust administrative remedies for her national origin, non-selection, and sexual harassment claims; and has not established a prima facie case of discrimination or retaliation. (Doc. No. 33.)

Bruce responded to the Secretary's motion for summary judgment and statement of undisputed material facts. (Doc. No. 38.) Bruce argues that she "has never been allowed to present her evidence[,] witness statements[,] or any facts related to this case" and argues that her supervisors and the EEO office did not provide help when she asked for it and, instead, tried to dissuade her from filing a complaint. (*Id.* at PageID# 330). Bruce did not file any exhibits with her response, and the Secretary did not file a reply.

On February 23, 2021, the Court received a letter from Bruce and Bruce's responses to the Secretary's discovery requests. (Doc. No. 40.) The Court returned Bruce's discovery materials and advised her that "the Court will only consider arguments made in motions, responses, and other pleadings. If Bruce wants to use documents to support her arguments, she should attach those documents to an appropriate motion, response, or pleading." (Doc. No. 41, PageID# 341.) Bruce did not file any motion asking the Court to consider additional evidence.

## II.       Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

## III.   Analysis

### A.   Local Rule 56.01 and the Secretary's Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Each of these facts "must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Pro se parties are not excused from complying with this rule. *See id.* Indeed, the Court's scheduling order in this action instructed the parties to "refer to Federal Rule of Civil Procedure 56 and Local Rule 56.01 for summary judgment procedures[,]" described Local Rule 56.01's requirements, and warned the parties that "[f]ailure to respond in opposition to a statement of material fact may result in the Court assuming that the fact is true for purposes of summary judgment." (Doc. No. 29, PageID# 131); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) ("If a timely response to a

moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.").

The Secretary filed a statement of undisputed material facts that complies with the requirements of Local Rule 56.01 and includes citations to declarations and other documents in the summary judgment record. (Doc. No. 36.) Bruce responded to some, but not all, of the Secretary's statements of fact, and none of Bruce's responses is supported by specific citations to the record. (Doc. No. 38.) The Court therefore will treat the Secretary's statements of fact as undisputed for the purposes of summary judgment, *see* M.D. Tenn. R. 56.01(f) (failure to respond); M.D. Tenn. R. 56(c)(3) (response to statement of facts). However, the Secretary must still meet her burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue of material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2021). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (3d ed. 2021). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he

moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."); *see also Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017) (viewing defendant's summary judgment evidence in light most favorable to plaintiff, finding it insufficient, and affirming, in part, district court's denial of summary judgment). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Adickes*, 398 U.S. at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also Evans*, 687 F. App'x at 446 (affirming, in part, denial of summary judgment where cited video evidence was insufficient to satisfy defendant's initial burden and plaintiff's opposition did not address that evidence); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2727.1 (4th ed. updated Apr. 2021) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response."). Under Rule 56(c)(3), the Court may also look to other materials in the record in its review. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

## B. Exhaustion of Administrative Remedies

"The right to bring an action under Title VII regarding equal employment [opportunity] in the federal government is predicated upon the timely exhaustion of administrative remedies, as set forth in [the relevant EEOC regulations]." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009) (first alteration in original) (quoting *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)). Failure to exhaust administrative remedies is an affirmative defense for which the defendant bears the burden of proof. *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008). For

a federal employee to exhaust her administrative remedies, she must initiate contact with an EEO counselor within forty-five days of the date of the alleged discriminatory action, 29 C.F.R. § 1614.105(a)(1); file a complaint "with the agency that allegedly discriminated against the complainant[,]" *id.* at § 1614.106(a); and receive a final agency decision, *id.* at § 1614.110(a). *Lockett*, 259 F. App'x at 786. The employee may file a discretionary appeal to the EEOC within thirty days of receiving the final agency decision, 29 C.F.R. § 1614.402(a), and may file a complaint in federal district court within ninety days of receiving notice of the final agency action or EEOC decision or within one hundred and eighty days of filing the initial complaint with the agency or appeal with the EEOC, *id.* at § 1614.407(a)–(d). *Lockett*, 259 F. App'x at 786.

The purpose of Title VII's exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). This "exhaustion of administrative processes . . . is a condition precedent to filing suit in the district court, rather than a jurisdictional prerequisite." *Mitchell v. Chapman*, 343 F.3d 811, 819–20 (6th Cir. 2003) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). As such, it is subject to equitable considerations like waiver, estoppel, and tolling. *Zipes*, 455 U.S. at 393. An objection based on an employee's failure to raise a claim in her original EEO complaint also "may be forfeited 'if the party asserting the rule waits too long to raise the point.'" *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005)). Further, Title VII's exhaustion requirement "is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *EEOC v.*

*McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)). Accordingly, EEO complaints are to be "liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Id.* (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)).

### 1. Sex- and National Origin-Based Hostile Work Environment Claims

The Secretary argues that Bruce failed to exhaust her sexual harassment, national origin discrimination, or failure to promote claims because she failed to allege them in her EEO complaint and because her EEO complaint was untimely.[6] (Doc. No. 33.) "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2021) ("[I]f the movant bears the burden of proof on a claim at trial, then its burden of production [on summary judgment] is greater. It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing."). Thus, to prevail on this defense at summary judgment, the Secretary must point to facts in the record sufficient to remove any genuine issue of material fact that Bruce failed to exhaust these claims.

The Secretary is hindered in establishing that Bruce failed to exhaust these claims by the fact that the Secretary has included only the first page of the three-page DA Form 2590 Bruce used

---

[6] The United States Supreme Court has interpreted Title VII's prohibition on discrimination "because of [an] individual's . . . sex," 42 U.S.C. § 2000e-2(a)(1), to include sexual harassment that creates a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S.57, 64 (1986).

17

to make her EEO complaint. (Doc. No. 35-1.) On the first page of the complaint, Bruce checked boxes to indicate that she had been discriminated against on the basis of race, color, sex, and reprisal and wrote:

> I Patricia Bruce am formally filing a discrimination and retaliation complaint against the following persons, Mr. J. Walker, Mr. C. Ruffin, Mr. D. George, Mr. A. Huggins, and Mrs. B. Russaw[.] [A]ttached are the following documents that I have compiled and given a copy to Mrs. Deborah Sutton, EEO Officer and my lawyer Mr. Peter M. Napolitano. These documents are dated to the best of my knowledge which

(*Id.* at PageID# 169.) Bruce's allegations stop mid-sentence, creating a reasonable inference that they continue on additional pages. But even the information included on this single page, when considered with other record evidence, creates a genuine issue of material fact that Bruce alleged a sex-based hostile work environment claim. Three days before she filed her complaint, Bruce reported that George and Ruffin had made sexually explicit comments to her, that Walker had participated in those conversations, and that she had been "hated" and "punished" for reasons including her interracial relationship and refusal of her coworkers' advances. (*Id.* at PageID# 180.) The fact that Bruce identified George, Ruffin, and Walker as the people who subjected her to discrimination only days after reporting that George, Ruffin, and Walker had subjected her to sex-based harassing conduct supports an inference that Bruce raised a sex-based hostile work environment claim in the EEO complaint.

The Department of the Army's response to Bruce's EEO complaint provides further support that Bruce alleged both sex-based and national origin discrimination. The Army sent Bruce's counsel a notice of acceptance that described Bruce's claims as follows:

> Was the complainant discriminated against and subjected to a hostile work environment as a continuous pattern between October 22, 2014 and January 14, 2016 on the basis of race (Latino), color (Unspecified), **sex (female)**, **national origin (Hispanic)**, and reprisal (Prior EEO contact October 31, 2014) while employed at Blanchfield Army Community Hospital when:

a. On November 11, 2015, a co-worker, Mr. Anthony Huggins, allegedly called her a bitch and a snake and threatened her with bodily harm by attempting to strike her in the face, allegedly shoulder-checked her and allegedly punched a table and slid a pot toward her?

b. On November 11, 2015, a coworker, Ms. Benita Russaw, allegedly made threats against her and allegedly sent messages to a co-worker saying "B[****] better watch her back" and allegedly said when she was near her, "That smells like Taco Bell and Mexican food?" [7]

c. On an unknown date, Mr. Jimmy Walker allegedly stated that he would kill her and Ms. Ruffin with bullets that leave no trace and made threats against her and her family?

d. Management at the Nutrition Care Department have allegedly tried to cover up incidents involving her and have called her a liar?

e. She has allegedly been harassed and ostracized by co-workers and supervisors?

f. On October 22, 2014, Mr. Huggins allegedly called her a 'f[***]ing b[****]?'

(Doc. No. 35-1, PageID# 175–76 (emphasis added).) The Army construed Bruce's EEO complaint as alleging sex-based discrimination, including a hostile work environment, and national origin discrimination and investigated facts underlying those claims. In its final action, the Department addressed sex-based and national origin discrimination and adopted the ALJ's finding "that [Bruce] had not been subjected to discrimination as to [those] claims." (Doc. No. 35-5, PageID# 282.) Because the record shows that the Department construed Bruce's EEO complaint to include allegations of sexual harassment and national origin discrimination, there is a genuine issue of material fact that Bruce exhausted those claims.

The Secretary also argues that Bruce did not exhaust claims arising out of "any event that occurred prior to October 20, 2015, which was 45 days" before her December 4, 2015 initial

---

[7]     Bruce testified that Russaw made these comments in September 2015, not November. (Doc. Nos. 35-1, 35-2.)

contact with an EEO counselor. (Doc. No. 33, PageID# 147.) But an agency waives its defense that a complaint of discrimination was untimely when it "decides the complaint on the merits without addressing the untimeliness defense." *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004). The record shows that the Department addressed Bruce's discrimination claims as articulated in the notice of acceptance on the merits and did not find them untimely. (Doc. No. 35-5.) For that reason, there is, at the very least, a genuine question of material fact as to whether the Secretary has waived timeliness and exhaustion as an affirmative defense. The Secretary is not entitled to summary judgment on those grounds.

### 2. Non-Promotion Claim

Bruce does not dispute that she failed to raise a non-promotion claim during the administrative proceedings, and that conclusion is supported by the record. Although several witnesses testified during the administrative proceedings that conflict arose between Bruce and Huggins after Huggins was promoted to first cook, Bruce has not alleged that she sought that promotion or that she should have been promoted instead of Huggins. In fact, Bruce testified that "Mr. Carter should have got[ten] that promotion." (Doc. No. 35-1, PageID# 216.) "[T]he record is so one-sided as to rule out the prospect" that Bruce raised a non-promotion claim in her EEO complaint, 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2021), and the Secretary is entitled to summary judgment on that claim because Bruce failed to exhaust it.

### C. Title VII Claims

Bruce's complaint in this action alleges that she was subjected to unequal terms and conditions of employment, assault, and defamation based on race, color, sex, national origin, and retaliation for protected activity and brings claims to redress that discrimination under Title VII. (Doc. No. 1.) Title VII encompasses (1) claims premised on "discrete discriminatory acts," also

20

20

20

20

referred to as disparate treatment "and (2) claims alleging a 'hostile work environment.'" *Hunter*, 565 F.3d at 993–94 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). In her complaint, Bruce explicitly alleges that she was subjected to a hostile work environment. (Doc. No. 1.) The ALJ also only considered Bruce's claims of retaliation and sex, color, race, and national origin discrimination as hostile work environment claims in the EEOC hearing. (Doc. No. 35-5.) At summary judgment in this Court, however, the Secretary only addresses Bruce's claims under a disparate treatment theory. The Court addresses both theories of discrimination.

### 1.     Disparate Treatment Claims

The Secretary argues that Bruce has not established a prima facie case of disparate treatment discrimination on any of the bases Bruce identifies. (Doc. No. 33.) To prevail on a claim of disparate treatment discrimination, a plaintiff must demonstrate: (1)  that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was otherwise qualified for the position; and (4) that she was treated worse than a similarly situated person outside the protected class. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The Secretary has established that there is no record evidence from which a factfinder could conclude that Bruce suffered an adverse employment action.

"Not every act affecting an individual's employment can be considered an adverse employment action." *McMillian v. Potter*, 130 F. App'x 793, 796 (6th Cir. 2005). "An adverse employment action in the context of a Title VII discrimination claim is a 'materially adverse change in the terms or conditions of employment because of the employer's actions.'" *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999)). It must "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Apart from Bruce's allegation that the Department failed to promote her—for which there is no supporting evidence in the record—she has not alleged that she experienced a discrete adverse employment action. There is no evidence that Bruce's salary, title, or benefits were negatively affected by any of the discriminatory acts she alleges. *See Bowman*, 220 F.3d at 461–62. The conflicts with coworkers and supervisors that are the focus of Bruce's claims—such as Russaw's September 2015 statements, Bruce's November 11, 2015 altercation with Huggins, and alleged threats by Russaw and Walker—are not materially adverse employment actions. *See, e.g.*, *Michael*, 496 F.3d at 594 (holding that confrontation between plaintiff and manager "in which harsh words were exchanged" was not a materially adverse employment action). Neither is the letter of reprimand placed in Bruce's personnel file because there is no evidence in the record that the letter materially affected any terms of her employment. *See McMillian*, 130 F. App'x at 797 (holding that placing disciplinary letter in plaintiff's personnel file was not adverse employment action where further discipline was not pursued and other terms of plaintiff's employment were not adversely affected). Because there is no genuine dispute of material fact that Bruce did not suffer a discrete adverse employment action, the Secretary is entitled to summary judgment on Bruce's claims of disparate treatment discrimination based on race, color, sex, and national origin.

### 2. Retaliation Claim

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) she engaged in a protected activity; (2) her 'exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quoting

*Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). The Secretary concedes that Bruce's 2014 EEO counselor contact qualifies as protected activity under Title VII and does not dispute that the second element of Bruce's claim has also been satisfied. The Secretary argues that Bruce has not offered evidence to establish the third and fourth elements of a materially adverse action and a causal connection to protected conduct. (Doc. No. 33, PageID# 153.)

The requirements for establishing a materially adverse action for a retaliation claim are "considerably less stringent" than for other Title VII discrimination claims. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569 (6th Cir. 2019) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56–69 (2006)). "[A] plaintiff seeking Title VII's protection against retaliation need show only 'that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 569–70 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.). However, the plaintiff must have suffered more than "trivial harms" or "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, . . . jokes, and occasional teasing." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

At the EEOC hearing, Bruce testified that she was harassed and ostracized by coworkers and supervisors who gave her a limited amount of time to perform tasks, denied her leave for her daughter's graduation, and did not give her breaks or offer to help her meet deadlines. (Doc. No. 35-2.) However, Bruce testified that this treatment ended soon after her 2014 EEO contact. (*Id.*) Even if they could be construed as materially adverse, there is no genuine dispute of material fact from which to conclude that these actions were caused by her protected conduct.

However, Bruce also testified that she believed her November 2015 altercation with Huggins was related to her October 2014 EEO contact because Huggins "had mentioned [the EEO contact] to [her] several times, and . . . he would show his anger quite often because of it." (*Id.* at PageID# 254, ¶¶ 1–3.) Bruce alleges that her supervisor, Walker, encouraged the conflict between Bruce and Huggins. Bruce's January 2016 statement recounts that Walker told Huggins that Bruce had reported to Stankorb that Huggins tried to hit her in the face in October 2014. After Huggins learned this, Bruce "ended up with Huggins in the office screaming in [her] face." (Doc. No. 35-1, PageID# 180.) Bruce also testified that her November 2015 conflict with Huggins was provoked by Walker, Ruffin, and George, who told Huggins "things that weren't true about [Bruce] to cause problems." (Doc. No. 35-2, PageID# 249.) Although these coworker interactions might not constitute adverse employment actions in the context of a disparate treatment claim, a reasonable factfinder could conclude that they meet *Burlington Northern*'s less-burdensome standard of materially adverse conduct that would dissuade a reasonable worker from making a charge of discrimination. *Hubbell*, 933 F.3d at 569; *see also Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 998 (6th Cir. 2009) (finding angry confrontation between employee and supervisor to be retaliatory action under *Burlington Northern*); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008) (holding that "retaliating against a complainant by permitting her fellow employees to punish her for invoking her rights" may constitute retaliation under Title VII (quoting *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996))).

Viewing this evidence in the light most favorable to Bruce and drawing all reasonable inferences in Bruce's favor, *see Barrett*, 556 F.3d at 511, a genuine issue of material fact exists as to whether these actions were motivated by Bruce's protected conduct and would have deterred a

reasonable employee from making or supporting a charge of discrimination. The Secretary is not entitled to summary judgment on Bruce's retaliation claim.

### 3. Hostile Work Environment Claims

Bruce has also alleged that she was subjected to a discriminatory hostile work environment. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). To prevail on a hostile work environment claim, a plaintiff must prove that

> (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [her protected status], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)). The hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did perceive to be so." *Faragher*, 524 U.S. at 787. In determining whether alleged harassment is sufficiently severe or pervasive to rise to the level of a hostile work environment, the court must look at the "totality of the circumstances," which "includes all incidents of alleged harassment" "by all perpetrators . . . ." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). "The elements and burden of proof [for a hostile work environment claim] are the same, regardless of the discrimination context in which the claim arises." *Randolph*, 453 F.3d at 733 (quoting *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

The Secretary has not addressed Bruce's hostile work environment claims, does not cite or argue the legal standard for proving those claims, and has not identified specific portions of the

record relevant to the hostile work environment claims. *See Adickes*, 398 U.S. at 161 ("[T]he party moving for summary judgment has the burden to show that he [or she] is entitled to judgment under established principles[.]"); Fed. R. Civ. P. 56(c)(1)(A). In particular, the Secretary has not addressed whether any unwelcome harassment Bruce experienced was severe and pervasive enough to alter the terms and conditions of her employment. *See Waldo*, 726 F.3d at 813. The Court therefore finds that the Secretary has not satisfied her initial burden to demonstrate an absence of any genuine dispute of material fact regarding essential elements of Bruce's claims of a hostile work environment based on race, color, sex, and national origin discrimination and retaliation for protected conduct. *See Woodby v. Bradley Cnty.*, No. 1:07-cv-3, 2008 WL 5245361, at *13 (E.D. Tenn. Dec. 16, 2008) (finding that defendants "failed to meet their initial burden of establishing an absence of a dispute of material fact" where defendants did "not set forth the applicable legal standards and . . . failed to analyze the relevant issues"). Summary judgment must therefore be denied with respect to those claims. *See Adickes*, 398 U.S. at 160; *Evans*, 687 F. App'x at 446; *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1106.

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the Secretary's motion for summary judgment (Doc. No. 32) be GRANTED IN PART with respect to Bruce's claims of non-promotion and disparate treatment based on race, color, sex, and national origin, and DENIED IN PART with respect to Bruce's claims of retaliation and hostile work environment based on race, color, sex, and national origin.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 19th day of August, 2021.

ALISTAIR E. NEWBERN
United States Magistrate Judge