IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICIA BRUCE, | ) |
| Plaintiff, | ) |
| | ) No. 3:20-cv-00087 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| CHRISTINE E. WORMUTH,[1] Secretary of the Army, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Pending before the Court is a Report and Recommendation ("R & R") of the Magistrate Judge (Doc. No. 42) recommending Defendant's Motion for Summary Judgment (Doc. No. 32, "Motion") be granted in part and denied in part. The R & R recommended, more specifically, that Defendant be (i) granted summary judgment on Plaintiff's Title VII claims of non-promotion and disparate treatment based on race, color, sex, and national origin; and (ii) denied summary judgment on Plaintiff's Title VII claims of retaliation and hostile work environment based on race, color, sex, and national origin.

Defendant filed an objection (Doc. No. 43, "Objection"), which objected only to the R & R's recommendation that Plaintiff's claim for retaliation survive summary judgment. Plaintiff did not respond to the Objection.

---

[1] Plaintiff's complaint is brought against the Secretary of the Army in the Secretary's official capacity. Pursuant to Fed. R. Civ. P. 25(d), upon a change in the holder of the office at issue in an official-capacity case, the new individual holding the position is substituted as the defendant. Wormuth became the new Secretary of the Army on May 28, 2021 and was automatically substituted as Defendant in this action.

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id*.

Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a Report and Recommendation, and Local Rule 72.02(a) provides that "Such objections must be written, must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made."[2]

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed *de novo* the Report and Recommendation, the Objections, and the file. For the reasons set forth below, the Objection of the Defendant is overruled, and the Report and Recommendation is adopted and approved.

## BACKGROUND

The facts are aptly set forth in the R & R and need not be repeated here in full. In this action, *pro se* Plaintiff Patricia Bruce filed a Complaint alleging various Title VII claims against Defendant, the Secretary of the Army, a position now occupied by Christine E. Wormuth. (Doc. No. 1). Plaintiff's claims stem from her employment at Blanchfield Army Community Hospital in Fort Campbell, Kentucky. (Doc. No. 35-1 at 5). Plaintiff alleges claims of disparate treatment, retaliation, and hostile work environment. (Doc. No. 1).

---

[2] The Local Rule also provides that any objections must be accompanied by sufficient documentation including, but not limited to, affidavits, pertinent exhibits, and if necessary, transcripts of the record to apprise the District Judge of the bases for the objections.

## DISCUSSION

Defendant objects only to the R & R's recommendation that Plaintiff's retaliation claim survive summary judgment.

Neither the parties nor the R & R have dwelled on the details of the applicable law governing the particular claim here at issue. But the Court finds it necessary to do so, in order to provide the context in which to place the particular arguments made in the Objection and then properly resolve them.

In pertinent part, Title VII of the Civil Rights Act of 1964 makes it unlawful to retaliate against employees for engaging in protected conduct. 42 U.S.C. § 2000e-3(a). Protected conduct includes opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. 28 U.S.C. § 2000e-3(a). Reporting or complaining of discrimination to management also constitutes protected conduct. *Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 753 (M.D. Tenn. 2010); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 WL 2927983, at *8 (M.D. Tenn. May 19, 2016). "This form of discrimination is commonly called 'retaliation,' although Title VII itself does not use that term." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 363 (2013) (5-4 decision) (Ginsburg, J., dissenting).

A plaintiff "'may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework.'" *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)). This means that if there is no direct evidence of retaliation, a retaliation claim is subject to the below-discussed *McDonnell Douglas* burden-shifting framework. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Here, it is clear based on the R &

3

R and the Objection that Plaintiff's retaliation claim survives, if at all, only under an indirect-evidence theory, and so the Court will conduct its analysis solely under the indirect-evidence framework.[3]

The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden-shifting framework as follows, noting in the latter paragraph the three stages of the framework:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).
>
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . . . [If and when] the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted). The first sentence of the latter paragraph lays out the first stage, the second sentence the second stage, and the third sentence the third stage. As indicated in *Redlin*, the second stage may or may not be reached, and if it is, the third stage may or may not be reached.

---

[3] Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted)). Indirect evidence is "evidence requiring inferences to reach the conclusion that [a d]efendant discriminated against [a p]laintiff[.]" *Brewer v. New Era, Inc.*, 564 F. App'x 834, 840 (6th Cir. 2014). In this context, and for purposes of these principles, retaliation is a form of discrimination, as noted herein.

4

Therefore, at the first stage of the indirect-evidence analysis, the plaintiff bears the burden of showing a *prima facie* case of retaliation. If the plaintiff fails to do so, the plaintiff loses then and there. If instead the plaintiff succeeds in doing so, however, the second stage is reached; the plaintiff cannot lose at the second stage, but the defendant can.[4] But if the plaintiff survives the first stage and the defendant survives the second stage, such that the third stage is reached, the plaintiff can lose at the third stage.

Here, Defendant does not argue that Plaintiff loses at the third stage (or would lose at the third stage if the analysis got that far). Instead, Defendant argues only that Plaintiff loses because she fails to meet her burden at the first stage, and so the Court will address only that argument.

It is important to explain how a plaintiff can lose at the first stage on a defendant's motion for summary judgment in particular (as opposed to at trial). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir. 2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). "Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 179 (2009). But this is actually true only if the defendant-movant met its initial burden of showing the absence of sufficient evidence for a jury to reach such a conclusion. The general idea

---

[4] *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981) ("Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case."); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (noting that if the plaintiff's claim is not defeated at the first stage, then the defendant-employer's "failure to introduce evidence of a nondiscriminatory reason will cause judgment to go against it").

5

under Rule 56 and the cases interpreting it is that the summary judgment movant bears the initial burden of showing, subject to the non-movant's opportunity to show to the contrary, that the non-movant cannot raise a genuine issue as to a material fact. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) ("The moving party must demonstrate the 'basis for its motion, and identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986))). This means that in the case of a defendant-movant, the defendant-movant thus bears the initial burden of showing, subject to the plaintiff's opportunity for rebuttal, that the plaintiff cannot raise a genuine issue as to one or more elements of the plaintiff's claim(s) as to which summary judgment is sought. This applies, in the normal manner, to a defendant's motion for summary judgment directed at an indirect-evidence theory of employment discrimination. *E.g.*, *Banks v. State of Ohio*, No. 94-3866, 1995 WL 118993, at * 2 (6th Cir. Mar. 20, 1995) ("The defendants met their initial burden of showing an absence of evidence to establish a prima facie case by showing that no one was similarly situated, or treated more favorably than she was."); *Sherman v. Fountain Valley Police Dep't*, No. SACV 17-2217 JVS, 2019 WL 4238873, at *7 (C.D. Cal. Apr. 2, 2019) (noting that the defendants moving for summary judgment as to claims based on an indirect-evidence theory "have the initial burden to either (1) negate an essential element of [the plaintiff]'s prima facie case or (2) establish a legitimate, nondiscriminatory reason for not promoting [the plaintiff]."); *Qualls v. Regents of Univ. of California*, No. 1:13-CV-00649-LJO, 2015 WL 5604293, at *9 (E.D. Cal. Sept. 23, 2015) (noting that "under *McDonnell Douglas,* Defendants have the initial burden of demonstrating that Plaintiff cannot make a prima facie showing" of a Title VII claim"), *order vacated in part on reconsideration on other grounds sub*

6

*nom. Qualls v. Regents of the Univ. of California*, No. 113CV00649LJOSMS, 2015 WL 6951757 (E.D. Cal. Nov. 10, 2015).[5]

All of which to say that if Defendant is to prevail here on the particular argument made in her Objection, Defendant must make an initial showing that Plaintiff has failed to submit evidence from which a jury could conclude that she established a *prima facie* case of retaliation. If Defendant succeeds in making this showing, then Plaintiff has an opportunity to rebut that showing via a demonstration of admissible evidence, failing which Plaintiff must suffer summary judgment. This, of course, leads to the question of what comprises a *prima facie* case of Title VII retaliation.

A claim of retaliation is treated like a claim of discrimination in that it is subject to *McDonnell Douglas* to the extent that, as in the present case, it is pursued under an indirect-evidence theory. *E.g.*, *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) ("When a plaintiff presents only circumstantial evidence, we examine Title VII . . . retaliation claims under the same *McDonnell Douglas/Burdine* evidentiary framework that is used to assess claims of discrimination."). And in this sense, courts' discussions about *McDonnell Douglas* are generally applicable to claims of retaliation even if framed in terms of discrimination; in the *McDonnell-Douglas* context, retaliation is treated essentially as a specific kind of discrimination. However, the elements to establish an indirect-evidence *prima facie* case are different for a Title VII retaliation claim than for a Title VII general discrimination claim.[6]

---

[5] On reconsideration, the defendants specifically challenged this proposition. The Court, though granting the defendants' motion in part on other grounds, specifically declined to disavow this proposition. *Qualls v. Regents of the Univ. of California*, No. 113CV00649LJOSMS, 2015 WL 6951757, at *3 (E.D. Cal. Nov. 10, 2015). And the Court noted what this Court is addressing herein: the "complex issues related to the interplay of the summary judgment standard and *McDonnell Douglas*." *Id.*

[6] In addition, and as mentioned in the R & R, at least one of the elements of both a retaliation claim and a general discrimination claim—an adverse employment action—is analyzed differently in

To establish a *prima facie* claim of retaliation under the indirect-evidence framework, the Plaintiff must show four elements: "(1) she engaged in a protected activity; (2) her 'exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quoting *Laster*, 746 F.3d at 730).

Although the Objection does not provide any of this context for its argument (or even identify what a *prima facie* case of retaliation is or what all of its elements are), it appears that the Objection focuses on the latter two elements. Regarding the first of these (*i.e.*, the third element), the Objection points to the following portion of the R & R:

> However, Bruce also testified that she believed her November 2015 altercation with Huggins was related to her October 2014 EEO contact because Huggins "had mentioned [the EEO contact] to [her] several times, and . . . he would show his anger quite often because of it." (*Id.* at PageID# 254, ¶¶ 1–3.) Bruce alleges that her supervisor, Walker, encouraged the conflict between Bruce and Huggins. Bruce's January 2016 statement recounts that Walker told Huggins that Bruce had reported to Stankorb that Huggins tried to hit her in the face in October 2014. After Huggins learned this, Bruce "ended up with Huggins in the office screaming in [her] face." (Doc. No. 35-1, PageID# 180.) **Bruce also testified that her November 2015 conflict with Huggins was provoked by Walker, Ruffin, and George, who told Huggins "things that weren't true about [Bruce] to cause problems." (Doc. No. 35-2, PageID# 249.)** Although these coworker interactions might not constitute adverse employment actions in the context of a disparate treatment claim, a reasonable factfinder could conclude that they meet *Burlington Northern*'s less-burdensome standard of materially adverse conduct that would dissuade a reasonable worker from making a charge of discrimination. *Hubbell*,

---

connection with a Title VII retaliation claim than in connection with a Title VII general discrimination claim. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) ("In contrast to Title VII's discrimination provision, the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that affect the terms, conditions, or status of employment, or those acts that occur in the workplace. The retaliation provision instead protects employees from conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citation and internal quotation marks omitted). Herein, the Court must and does employ the lower standard for a retaliation claim (the so-called *Burlington Northern standard* discussed below).

8

Case 3:20-cv-00087   Document 45   Filed 09/21/21   Page 8 of 16 PageID #: 391

> 933 F.3d at 569; *see also Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 998 (6th Cir. 2009) (finding angry confrontation between employee and supervisor to be retaliatory action under *Burlington Northern*); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008) (holding that "retaliating against a complainant by permitting her fellow employees to punish her for invoking her rights" may constitute retaliation under Title VII (quoting *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996))).

(Doc. No. 42 at 24) (emphasis added). The R & R here refers first to Walker (Plaintiff's second-level supervisor) informing Huggins that Plaintiff had reported him to Stankorb, resulting in Huggins screaming at Plaintiff, and then to Walker, as well as Ruffin and George (who do not appear from the record to be supervisors) provoking conflict with Huggins that manifested itself in an incident occurring in November 2015. It appears that the R & R reasoned that (a) "co-worker interactions" of the type described could rise to the level of adverse employment actions for purposes of a retaliation claim, and (b) all of "these co-worker interactions" could support a claim of retaliation because they occurred after Plaintiff made her initial EEO contact and thus could be causally linked to her EEO contact. Defendant in essence challenges each of these two propositions.

The Court will address the second proposition first. Defendant correctly points out a flaw in the R & R's reliance on the testimony of Plaintiff (from Doc. No. 35-2, PageID# 249) highlighted in bold above. The R & R referred to this testimony as if it evidenced provocation of Huggins in advance of the November 2015 incident with Huggins; in reality, however, that testimony concerned provocation of Huggins leading up to an incident occurring on October 22, 2014, which was *before* Plaintiff's initial EEO contact (on October 31, 2014). (Doc. No. 43 at 2). This October 2014 incident (and any provocation of Huggins that led up to it) does not support the R & R's recommendation as to the retaliation claim; given the timing of the incident (and preceding provocations) discussed in this particular testimony, neither the incident nor the preceding

9

provocations could have been in retaliation for Plaintiff's EEO contact, and so this testimony fails to support Plaintiff's retaliation claim. However, the Court suspects this incorrect citation was a simple mistake, as only a few pages later in Plaintiff's testimony, she states that Walker, as well as Ruffin and George engaged again in the same behavior (provocation of Huggins), causing the November 2015 dispute. (Doc. No. 35-2, Page ID# 251). In responding to a question about what caused the November 2015 altercation between her and Huggins, Plaintiff explains, "It was the same – the same accusation that Walker, Ruffin, and Dexter George were coming up to him, saying that I was talking bad about him." (*Id.*). So despite its one particular misstep, the R & R does cite testimony that, if admissible, is temporally capable of supporting a retaliation claim because it concerns an incident (and provocation leading up to it) that post-dates Plaintiff's initial EEO contact.

As for the first proposition, the Court concludes that "co-worker interactions" generally do not constitute adverse employment actions if Plaintiff's relevant "co-workers" are not supervisors. *See Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 494 (M.D. La. 2012) (holding that evidence of a particular incident "does not defeat summary judgment [because] [w]ith respect to a discrimination claim, at most it represents criticism by a non-supervisor, which does not constitute an adverse employment action"). Non-supervisor interactions could constitute adverse employment actions if they somehow were encouraged by or deliberately ignored by Defendant's management, or otherwise attributable to Defendant.[7] But the Court does not see any evidence of this. So the Court focuses on the actions of Plaintiff's (second-line) *supervisor*, Walker.

---

[7] As cogently explained by one district court, noting that acts of co-workers do not amount to adverse employment actions unless the defendant is in some specific sense responsible for the occurrence of such co-worker's acts:

10

Case 3:20-cv-00087   Document 45   Filed 09/21/21   Page 10 of 16 PageID #: 393

In the context of retaliation claims, the Supreme Court has prescribed a "relatively low bar" standard of materially adverse action that could dissuade a reasonable employee from protected conduct. *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). However, this low bar standard is still subject to the requirements of a motion for summary judgment. Fed. R. Civ. P. 56. As explained above, and as noted in the R & R, a party moving for summary judgment bears "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the movant satisfies this burden, the non-movant must set forth specific evidence showing there is a genuine issue for trial. *Pittman*, 901 F.3d at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).[8]

---

> The Court notes that adverse employment actions are normally taken by the *employer*. *See Burlington*, 548 U.S. at 68 ("The antiretaliation provision ... prohibit[s] *employer actions* that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." (emphasis added) (citation omitted)). But the conduct of a plaintiff's coworkers can constitute an adverse employment action for purposes of a retaliation claim where the employer knows about the conduct but fails to stop it. *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) ("An employee could suffer a materially adverse change in the terms and conditions of her employment if her employer knew about but failed to take action to abate retaliatory harassment inflicted by coworkers."), *abrogated on other grounds by Burlington*, 548 U.S. 53.

*Gonzalez v. New York City Health & Hosp. Corp.*, No. 18-CV-2645 (JPO), 2019 WL 2435622, at *11 n. 8 (S.D.N.Y. June 11, 2019). It is for this reason that a plaintiff seeking to establish an adverse action based on the negative interactions of mere co-workers (as opposed to supervisors) needs to establish that such co-workers' (inter)actions "can be attributed to [the defendant] for the purpose of constituting an adverse action." *Id.*

[8] *Anderson* actually phrased the requirement for the non-movant as one to show "specific *facts* showing that there is a genuine issue for trial." 477 U.S. at 250 (emphasis added). But as plainly indicated by the text in *Pittman* that surrounds its quote of *Anderson*, the requirement, stated more precisely, is to set forth specific *evidence* showing that there is a genuine issue for trial *as to* a material *fact*; here, that means evidence showing a genuine issue for trial as to the material fact of the existence (or non-existence) of an adverse employment action. *Anderson* is not alone in its mixing of these concepts; there appears to be occasional verbal commingling of the concept of

In reviewing the Defendant's Motion, the Court finds that Defendant met her initial burden (as the summary judgment movant) of illustrating an absence of a genuine dispute regarding the existence of a materially adverse employment action. Plaintiff herself never made clear what the nature of the alleged adverse employment action supposedly was,[9] so Defendant essentially had to guess at what kind of alleged adverse employment action she needed to challenge; as it happens, though, Defendant did direct her challenge essentially towards the kind of adverse employment action the Magistrate Judge eventually identified. To show the lack of evidence, Defendant pointed to Plaintiff's testimony that she was ostracized and harassed by coworkers *until* (as opposed to *after*) she made her initial EEO contact in October 2014. (Doc. No. 35-2 at 20). Defendant also pointed to evidence that Huggins and Plaintiff were treated the same during the administrative investigation that followed their dispute in November of 2015. (Doc. No. 35-1 at 22-41). Although hardly dispositive of whether Plaintiff suffered an adverse employment action, such evidence sufficiently suggests a lack of evidence of any adverse employment action to put the onus on Plaintiff to show that she could present evidence at trial sufficient to support a jury finding that she actually had suffered an adverse employment action.

In responding to Defendant's Motion, Plaintiff fails to make any citations to the evidentiary record to show a genuine dispute as to the existence of an adverse employment action. (Doc. No. 38). It appears that the Magistrate Judge—apparently in a conscientious effort to observe the legal

---

"fact(s)" and the concept of "evidence" in this context. *See e.g.*, *Cordova v. West*, 925 F. Supp. 704, 709 (D. Colo. 1996) (stating that "a plaintiff still has to present specific *factual evidence* showing that there is a genuine issue of material fact . . . in order to avoid summary judgment") (emphasis added).

[9] It appears that it was the Magistrate Judge, doubtless seeking to ensure that the evidence be construed in the non-movant's favor and that Plaintiff got a fair shake despite being unrepresented by counsel, who articulated the adverse employment action as (negative) "co-worker interactions."

requirements that evidence be construed in favor of the non-movants and that pro se parties receive an appropriate measure of leniency—took the initiative to search the record for evidence that would support a finding of adverse employment action. In her Objection, Defendant did not claim that the Magistrate Judge went too far in doing Plaintiff's work for her, nor argue specifically that *Plaintiff* did not point to sufficient evidence even if the *Magistrate Judge* had done so; thus, the Court will review the evidence cited by the Magistrate Judge to see whether it constitutes (or at least reflects the availability of) admissible evidence sufficient to support a jury finding of an adverse employment action.

The Court answers that question in the negative. Even considering all portions of the record to which the Magistrate Judge pointed (or intended to point), there is no admissible evidence to show that Walker, Plaintiff's supervisor, engaged in adverse employment action toward Plaintiff after her initial EEO contact. The evidence identified by the Magistrate Judge consists entirely of prior statements (some prior testimony and one written statement) of Plaintiff. There is no corroborating evidence to support Plaintiff's assertions that Walker provoked Huggins to come after Plaintiff, but the Court is satisfied that corroborating evidence is generally not required for a plaintiff to avoid summary judgment based on her own testimony. *See*, e.*g.*, *Cordova*, 925 F. Supp. at 709 ("as a general proposition, the plaintiff's testimony alone may be sufficient to establish the elements of a discrimination case"). However, "[u]nsubstantiated allegations carry no weight in summary judgment proceedings." *Id.* (citing *Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir. 1992). Nor does "[m]ere conjecture by a plaintiff." *Id.*; *see also Marshall v. Ormet Corp.*, No. 90-3508, 1991 WL 78160, at *3 (6th Cir. May 14, 1991) ("Mere conjecture and speculation is never enough to rebut a summary judgment motion."), *reh'g granted, order vacated on other grounds* (July 30, 1991), *superseded on other grounds*, 940 F.2d 661 (6th Cir. 1991). And conjecture and

13

speculation is really all that is offered in the cited portions of Plaintiff's statements to the effect that Walker was involved in provoking Huggins to come after Plaintiff.

The cited statements are additionally problematic for two related reasons (each of which in turn is related to each other). As is often the case for testimony that ultimately consists of mere speculation and conjecture, the proffered testimony here in very pertinent part incorporates inadmissible hearsay and fails to reflect that Plaintiff has personal knowledge about the facts (concerning Walker's role in stirring the pot) as to which she offers speculation.

First, if proffered testimony is to be admissible on a motion for summary judgment, it must sufficiently appear to be based on personal knowledge. *See, e.g., Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, 2008 WL 8511691, at *9 (E.D. Mich. Sept. 30, 2008) (if non-movant offers deposition testimony to defeat summary judgment, testimony must "rest upon the deponent's personal knowledge, and testimony about matters that the deponent 'cannot remember' does not suffice to withstand an award of summary judgment."). There need not be a rote incantation anywhere that the proffered testimony is based on personal knowledge, but there must appear from the record as a whole a basis for concluding that it is indeed based on personal knowledge. *Richardson v. Oldham*, 811 F. Supp. 1186, 1196 (E.D. Tex. 1992). On a motion for summary judgment, "[i]t is the burden of the party submitting the [sworn testimony] to demonstrate that the witness has personal knowledge of the statements contained in the affidavit." *Wilson v. Budco*, 762 F. Supp. 2d 1047, 1057 (E.D. Mich. 2011). Plaintiff's proffered testimony does not intrinsically appear to be based on personal knowledge and has not been the subject of any express testimony or declaration averring that such testimony is based on personal knowledge.

Indeed, it generally is entirely unclear *how* she supposedly knows *what* she supposedly knows about what Walker did. There is one exception to this: in one portion of a cited statement

14

Case 3:20-cv-00087   Document 45   Filed 09/21/21   Page 14 of 16 PageID #: 397

of Plaintiff,[10] Plaintiff identifies Huggins as her source of knowledge; there, she claims to have been told by Huggins that Walker told Huggins that Plaintiff was causing trouble for him (Huggins) (Doc. No. 35-1 at 18). But here, Plaintiff's source of knowledge for this potential testimony about what Walker did is hearsay—what she heard from Huggins—and to that extent the testimony is demonstrably not based on personal knowledge. *See Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 846 (6th Cir. 2016) ("[Plaintiff's] testimony regarding these incidents is inadmissible to the extent it is hearsay—that is, the testimony is based on statements [her child] made to her rather than her personal knowledge.").

Relatedly, the particular hearsay and (hearsay within hearsay) statements within such testimony themselves are inadmissible because they are rank hearsay not subject to any exception to the hearsay rule. That is to say, the potential testimony includes Walker's statement to Huggins (hearsay within hearsay) and Huggins statement *to Plaintiff* (hearsay within hearsay) about Walker's statement to Huggins. And "hearsay evidence cannot be considered on a motion for summary judgment." *Wilson*, 762 F. Supp. at 1057.[11]

Because the cited evidence essentially is all inadmissible, it does not help that the Court must view this (inadmissible) evidence in the light most favorable to Plaintiff and draw all reasonable inferences therefrom in Plaintiff's favor. The Court simply lacks evidence from which

---

[10] It is unclear to the Court whether this written statement of Plaintiff was sworn to at some point (or, to the same effect, made under penalty of perjury). "Unsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment." *Lugue v. Hercules, Inc.*, 12 F. Supp. 2d 1351, 1355 (S.D. Ga. 1997). The Court will assume that it is sworn and thus not inadmissible on the grounds that it is unsworn.

[11] During the briefing of the Motion, Defendant did not object to the admissibility of the evidence that eventually was cited by the Magistrate Judge. But the Court does not construe this as a waiver of any such objection, because Defendant did not have an occasion or opportunity to object, since this evidence was not cited by Plaintiff.

15

to conclude that Plaintiff has shown a genuine dispute as to whether she suffered an adverse employment action as required by the third element of a *prima facie* case of Title VII retaliation, which is obviously an issue of material fact. And unless Plaintiff can raise a genuine issue as to *all* elements of her *prima facie* case, her claim of Title VII retaliation fails because it is based solely on indirect evidence. Because the Court has determined that Defendant succeeds on her motion for summary judgment based on the lack of a genuine issue as to the existence of the third element of a *prima facie* case for Title VII retaliation, the Court declines to consider Defendant's arguments related to the fourth element of "but-for causation"

## CONCLUSION

For the reasons discussed herein, Defendant's Objection (Doc. No. 43) is sustained to the extent indicated herein. Thus, the Magistrate Judge's Report and Recommendation (Doc. No. 42) is **ADOPTED IN PART and NOT ADOPTED IN PART**. Specifically, the Report and Recommendation is adopted, except with respect to those particular portions of its analysis the Court has rejected herein, and its disposition, as to Plaintiff's Title VII retaliation claim. Accordingly, the Motion for Summary Judgment (Doc. No. 32) is **GRANTED** in part and **DENIED** in part. Specifically, Defendant is GRANTED summary judgment as to Plaintiff's claims of non-promotion and disparate treatment based on race, color, sex, and national origin, as well as Plaintiff's claim of Title VII retaliation. Defendant is DENIED summary judgment as to Plaintiff's claim of hostile work environment based on race, color, sex, and national origin; that claim shall proceed to trial.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE